UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GINA RAIMONDO, et al.,<br><br>Defendants. | Case No. 23-cv-06642-AMO<br><br>**ORDER GRANTING PARTIAL MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

Defendants seek to dismiss the two causes of action Plaintiffs bring under the Endangered Species Act for failure to provide the mandatory 60-day notice of intent to sue. Defendants' motion to dismiss was heard before this Court on May 16, 2024. Having read the papers filed by the parties, carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the partial motion to dismiss for the following reasons.

I. BACKGROUND

    A. **Factual Background**[1]

Plaintiffs Center for Biological Diversity and Turtle Island Restoration Network challenge a rule issued by Defendants Secretary of Commerce Gina Raimondo and the National Marine Fisheries Service (collectively, the "Fisheries Service"). In 1970, the Fisheries Service listed leatherback sea turtles as endangered, and in 2012, designated the critical sea turtle habitat to include waters of the West Coast of the United States. ECF 1 ("Compl.") ¶ 51. After a

---

[1] The Court accepts Plaintiffs' allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiffs. *See Wolfe* v. *Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

comprehensive status review of leatherback sea turtles in 2020, the Fisheries Service found that the West Pacific leatherback sea turtle is a distinct population of endangered species under the Endangered Species Act. Compl. ¶¶ 52-53. As of 2017, there are only 1,053 nesting females, placing leatherbacks at a great risk of extinction. Compl. ¶ 55. The West Pacific leatherback population has been declining by approximately six percent annually through 2017. Compl. ¶ 56.

The Fisheries Service manages "groundfish" that live on or near the bottom of the ocean, including sablefish. Compl. ¶ 66. In Washington, Oregon, and California, there are pot fisheries where heavy pots or traps are linked along the seafloor, with the ends attached to a line that runs to buoys. Compl. ¶ 67. Such pot fishing occurs in areas and during the time of year when the West Pacific leatherback migrates seasonally to feed off the West Coast. Compl. ¶ 69. Leatherbacks have been entangled in the coastal pot fisheries and killed by fishing vessel strikes. Compl. ¶ 70.

In 2012, the Fisheries Service issued a Biological Opinion assessing the effects of the pot fishery on endangered and threatened species and their critical habitats, including the leatherback sea turtles. Compl. ¶ 74. The 2012 Biological Opinion anticipated that the pot fishery would injure or kill 1.9 leatherback sea turtles over five years (or 0.38 annually). Compl. ¶ 75. It calculated this risk by including interactions observed in the pot fishery as well as those attributable to unidentifiable fishing gear. Compl. ¶ 76.

On December 1, 2023, the Fisheries Service promulgated a rule (the "Reopening Rule") to open nearly 2,000 square miles of leatherback sea turtle critical habitat to sablefish pot fishing. Compl. ¶ 81. The Reopening Rule specifically allows sablefish pot gear in parts of a conservation area that have been closed since the early 2000s to protect overfished rockfish (a type of groundfish) and allows fishing closer to shore. Compl. ¶¶ 81-82. The Reopening Rule changed the boundary in the leatherback critical habitat, allowing the pot fishery to set pots in 407 square miles of the leatherback's principal feeding area. Compl. ¶ 88. The pot fishery's operation over a larger area of leatherback critical habitat "increases the risk of leatherback entanglement and adversely modifies the critical habitat . . . [.]" Compl. ¶ 83.

The Fisheries Service determined that there were no anticipated impacts of the Reopening Rule on endangered leatherback sea turtles beyond what it already considered in the 2012

2

1  Biological Opinion.  Compl. ¶ 86.  The Fisheries Service did not reinitiate or complete
2  consultation on the impacts of the Reopening Rule on leatherback sea turtles and their designated
3  critical habitat.  Compl. ¶ 92.

### B. Procedural Background

On December 28, 2023, Plaintiffs Center for Biological Diversity (the "Center") and Turtle Island Restoration Network ("Turtle Island") (collectively, "Plaintiffs") filed a lawsuit against Defendants Gina Raimondo, U.S. Secretary for Commerce, and National Marine Fisheries Service (collectively, "Fisheries Service" or "Defendants"), alleging three causes of action challenging the Reopening Rule issued by Defendants under the Magnuson-Stevens Fishery Conservation and Management Act ("MSA").  Plaintiffs allege violation of the Endangered Species Act ("ESA") for failure to reinitiate and complete consultation (count one), violation of the ESA and Administrative Procedure Act ("APA") for unlawful reliance on the 2012 Biological Opinion (count two), and violation of the MSA and APA for unlawful issuance of the Reopening Rule (count three).  Plaintiffs request declaratory relief that the Fisheries Service has violated each of these statutes, and that the Court vacate certain Reopening Rule provisions and order Defendants to complete ESA consultation and issue a new biological opinion within 90 days.  On February 26, 2024, through the instant motion, Defendants move to dismiss the first two causes of action.  ECF 14.

## II. DISCUSSION

Defendants move to dismiss the first two causes of action for lack of subject matter jurisdiction due to Plaintiffs' failure to comply with the ESA's 60-day notice provision.  ECF 14 ("Mot.") at 21.  The ESA contains a citizen suit provision that provides a cause of action and mandates that "[n]o action may be commenced . . . prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation."  16 U.S.C. § 1540(g)(1)-(2).  "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998).  Until recently, the Ninth Circuit has held that the sixty-day notice requirement is jurisdictional.  *See Cascadia Wildlands v. Scott*

*Timber Co.*, 105 F.4th 1144, 1150 (9th Cir. 2024) (citing *Save the Yaak Comm. v. Block*, 840 F.2d 714, 721 (9th Cir. 1988)). The Ninth Circuit has now clarified that the ESA notice requirement "is a mandatory claims-processing rule, not a jurisdictional predicate." *Id.* at 1153.[2]

The parties agree that Plaintiffs did not provide the required notice. Defendants contend that, as a result, the Court must dismiss the ESA claims. Mot. at 21-24. Plaintiffs advance three reasons they did not need to comply with the ESA's notice provision: (1) where, as here, the ESA claims are substantively MSA claims, only the MSA jurisdictional provisions apply; (2) the ESA's 60-day notice requirement conflicts with the MSA's 30-day statute of limitations, and, as a result, the MSA's "more specific" jurisdictional provision controls; and (3) filing ESA claims after initiating a lawsuit pursuant to other statutes does not promote the policy objectives of the MSA. ECF 19 ("Opp.") at 10-17. The Court addresses each in turn.

### 1. The ESA Claims are Distinct from the MSA Claim

Plaintiffs first contend that notice under the ESA is not required here because the substance of the first two causes of action are MSA violations, and therefore the MSA jurisdictional provision occurs. Opp. at 12-14. The Court cannot agree. In determining whether the MSA's statute of limitation applies, the Court looks to the "essence" of the complaint. *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 438 F.3d 937, 944 (9th Cir. 2006) (finding that plaintiff's challenge of the reopening of a swordfish fishery challenged the MSA in substance – despite failing to cite to the MSA – and thus, the MSA's 30-day statute of limitations applied). In *Turtle Island*, the Court found that claims brought under other statutes were substantively MSA claims because they were "appropriately characterized as an attack on the regulations reopening the fishery." *Id.* at 939; *cf. Washington v. Daley*, 173 F.3d 1158, 1170 n.16 (9th Cir. 1999) (holding that the ESA's notice requirement "need not be met" where plaintiff's claims were brought under the MSA). Here, distinctly, Plaintiffs bring the first two causes of action under the

---

[2] *Cascadia* was decided after the parties briefed the instant motion. The Court grants Plaintiffs' motion for leave to file a notice of supplementary authority as to the decision. ECF 41. Although the ESA notice requirement is no longer considered "jurisdictional," *Cascadia* does not change the notice requirement under the ESA.

4

1  ESA, challenging the Fisheries Services' violation of the ESA by failing to complete consultation
2  and relying on the 2012 biological opinion in issuing the Reopening Rule. *Turtle Island* suggests
3  that Plaintiffs may not avoid the 30-day jurisdictional limit of the MSA where they challenge the
4  regulations promulgated under the MSA. 438 F.3d at 945. However, contrary to Plaintiffs'
5  contention, Ninth Circuit authority does not hold that a plaintiff may ignore the notice requirement
6  under the ESA simply because the alleged ESA violation involves a rule promulgated under the
7  MSA. *See id.* at 939. Accordingly, this argument fails.

### 2. Plaintiffs Could Have Complied with the ESA and MSA Jurisdictional Provisions

10  Plaintiffs next contend that the ESA and MSA conflict because Plaintiffs cannot comply
11  with both the ESA 60-day notice requirement and MSA 30-day statute of limitations. The Ninth
12  Circuit has already held that the two statutes' requirements can coexist. *Alliance for the Wild
13  Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 601-02 (9th Cir. 2014) ("*Alliance*"). Indeed, "there
14  is nothing in the ESA that remotely suggests that a potential ESA plaintiff must refrain from
15  commencing suit to pursue other non-ESA claims before the 60–day period expires." *Id.* at 603.
16  In *Alliance*, the plaintiff provided notice of its intent to sue under the ESA, filed a complaint
17  alleging non-ESA claims, and after the 60-day notice period expired, amended the complaint to
18  add ESA claims. *Id.* at 602. The Ninth Circuit held that this complied with the ESA's
19  unambiguous language that "actions under the ESA may not commence until 60 days after a
20  potential plaintiff has notified the Secretary . . . of a purported ESA violation." *Id.* Plaintiffs
21  contend that *Alliance* is inapplicable here because the 60-day ESA notice requirement conflicts
22  with the 30-day MSA statute of limitations, and the plaintiffs in *Alliance* did not bring claims
23  under statutes with similarly conflicting provisions. Opp. at 15-16. The Court does not find this
24  persuasive because the Ninth Circuit has laid out a procedure by which a plaintiff can comply with
25  both statutes. *See Center for Biological Diversity v. Environmental Protection Agency*, 847 F.3d
26  1075, 1088-89, n.16 (9th Cir. 2017) (concluding that *Alliance* helps address how "two
27  jurisdictional statutes can co-exist" where the plaintiff expressed a similar concern about the ESA
28  notice period conflicting with a statute of limitations in a different statute) (citing *Alliance*, 772

F.3d at 603-04). Because Plaintiffs could have followed the procedures proposed in *Alliance* and complied with both the 30-day MSA statute of limitations and the 60-day ESA notice requirement, the Court cannot find that the mandatory ESA notice requirement is waived here.

### 3. The MSA's Policy Objectives

Finally, Plaintiffs argue that filing ESA claims after bringing a lawsuit based on other claims does not promote the policy objectives of the MSA because it would not provide agencies with "an opportunity for settlement or other resolution of a dispute without litigation." Opp. at 15 (quoting *Sw. Ctr. for Biological Diversity*, 143 F.3d at 520). Whether a process complies with policy objectives is a question best left to the legislature. Nevertheless, under the procedure detailed in *Alliance*, Plaintiffs could have provided notice before suing under the MSA and later amended the complaint, thus giving Defendants at least 60 days to resolve the ESA claims before litigation was brought under those claims.

Although the Court recognizes the tension between the 60-day notice required under the ESA and the 30-day statute of limitations under the MSA, ultimately, Plaintiffs have not pointed to any authority showing that the Court should not dismiss their ESA claims where Plaintiffs failed to comply with the 60-day ESA notice provision. The Court therefore **DISMISSES** the first two counts of the complaint.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the partial motion to dismiss counts one and two.

**IT IS SO ORDERED.**

Dated: July 24, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**