UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GINA RAIMONDO, et al.,<br><br>  Defendants. | Case No. 23-cv-06642-AMO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 51 |

This is a case challenging the promulgation of a rule opening leatherback sea turtle habitat along the West Coast of the United States to sablefish pot fishing. Before the Court are the parties' cross-motions for summary judgment. The motions were heard before this Court on December 12, 2024. Having read the papers filed by the parties, carefully considered the arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Defendants' motion for summary judgment for the following reasons.

**I.      BACKGROUND**

To promote the sustainability of marine fisheries, Congress enacted the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"). 16 U.S.C. § 1801(b); *Turtle Island Restoration Network v. United States Dep't of Com.*, 878 F.3d 725, 726-30 (9th Cir. 2017). The MSA created eight regional fishery management councils and requires the councils to develop, and the National Marine Fisheries Service or U.S. Fish and Wildlife Service to approve, fishery management plans ("FMP") and implementing regulations containing measures necessary to conserve and manage each fishery. 16 U.S.C. §§ 1852(h)(1), 1853(a), 1854(a). FMPs must be consistent with MSA standards and "any other applicable law," 16 U.S.C. § 1853(a)(1)(C), including the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1543.

The ESA seeks to ensure that federal agency action is "not likely to jeopardize the continued existence" of any species designated as threatened or endangered. 16 U.S.C. § 1536(a)(2). An action "likely to jeopardize the continued existence" of a species is one that is "reasonably . . . expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02. Section 7 of the ESA requires that any agency seeking to take action that may impact an ESA-listed species must first consult with either the National Marine Fisheries Service or the U.S. Fish and Wildlife Service, depending on the species at issue. The agency will then review the proposed action and issue a "Biological Opinion" ("BiOp") evaluating whether and the extent to which the action may impact the species. 16 U.S.C. § 1536(b); 50 C.F.R. § 402.12.

The consultation process must include – and the BiOp must describe – the following: (1) an evaluation of the current status and environmental baseline of the listed species or critical habitat; (2) an evaluation of the effects of the action and cumulative effects on the listed species or critical habitat; and (3) the agency's opinion as to whether the action is likely to jeopardize the continued existence of the species or result in the destruction or adverse modification of critical habitat based on the addition of the action's effects and the cumulative effects to the environmental baseline and in light of the status of the species and critical habitat. 50 C.F.R. § 402.14(g)-(h). Agencies are obligated to reinitiate consultation if certain conditions arise following the issuance of the BiOp. 50 C.F.R. § 402.16(a).

On December 1, 2023, the National Marine Fisheries Service promulgated a rule amending the Pacific Coast Groundfish Fishery Management Plan ("Groundfish FMP") to allow sablefish pot fishing in leatherback sea turtle critical habitat (the "Rule"). AR02071-AR02072.[1] The National Marine Fisheries Service listed leatherback sea turtles as endangered in 1970, and in 2012, it designated the critical habitat for sea turtles to include waters off the West Coast of the

---

[1] "AR" citations are to the administrative record, which was manually lodged with the Court. *See* ECF 26.

1   United States. 50 C.F.R. § 224.101(h); AR07967. Following a review in 2020, the National
2   Marine Fisheries Service found that the West Pacific leatherback sea turtle is a distinct population
3   of endangered species under the ESA. *Id.* The West Pacific leatherback population has been in
4   steady decline for decades. AR03192. The Fisheries Service additionally manages "groundfish"
5   that live on or near the bottom of the ocean, including sablefish. 50 C.F.R. §§ 660.10-660.79.
6   Sablefish fisheries involve pots or traps that are linked along the seafloor, with the ends attached
7   to a line that runs to buoys. Leatherback sea turtles have become entangled in the pot fishery gear
8   and have been struck by fishing vessels. In 2012, the National Marine Fisheries Service issued a
9   BiOp assessing the effects of the pot fishery on endangered and threatened species and their
10  critical habitats, including the leatherback sea turtles. AR00484-AR00682. The 2012 BiOp
11  anticipated that the pot fishery would injure or kill 1.9 leatherback sea turtles over five years (or
12  0.38 annually). AR00592, AR00611. It calculated this risk by including interactions observed in
13  the pot fishery as well as those attributable to unidentifiable fishing gear. *Id.*

14  The Rule specifically allows sablefish pot gear in parts of a conservation area that has been
15  closed since the early 2000s to protect overfished rockfish and allows fishing closer to shore.
16  AR02072-AR02073. The Rule changed the boundary in the leatherback critical habitat, allowing
17  the pot fishery to set pots in 407 square miles of the leatherback's principal feeding area. *Id.*
18  Relying on its determination that there were no anticipated impacts of the Rule on leatherback sea
19  turtles beyond impacts it already considered in the 2012 BiOp, the National Marine Fisheries
20  Service promulgated the Rule without reinitiating consultation. AR02078.

21  On December 28, 2023, the Center for Biological Diversity and Turtle Island Restoration
22  Network (collectively, "Plaintiffs") filed a lawsuit against Secretary of Commerce Gina Raimondo
23  and the National Marine Fisheries Service (collectively, the "Fisheries Service") raising two
24  causes of action under the ESA and one under the MSA. On March 24, 2024, the Fisheries
25  Service reinitiated consultation on the effects of the Groundfish FMP to the leatherback sea turtle
26  and humpback whale and their critical habitats. On July 24, 2024, the Court dismissed Plaintiffs'
27  two ESA claims for failure to provide pre-suit notice. On August 14, 2024, Plaintiffs moved for
28  summary judgment on their remaining claim. On September 18, 2024, Defendants opposed the

1  motion and filed a cross-motion for summary judgment. On November 22, 2024, Defendants
2  moved for leave to file as supplementary material a new BiOp ("2024 BiOp") issued that same
3  day, which concluded the consultation initiated in March. The Court granted the motion,
4  continued the November 25, 2024 summary judgment hearing, and ordered the parties to submit
5  supplemental briefing on whether the case is moot.

**II.    DISCUSSION**

Before the Court are the parties' cross-motions for summary judgment. Plaintiffs move for summary judgment, arguing the Fisheries Service violated the MSA by relying on the 2012 BiOp in issuing the Rule rather than reinitiating consultation on the impacts of the Rule to leatherback sea turtles and their critical habitat. Among other things, the Fisheries Service asserts that the 2024 BiOp has mooted this case. Because mootness is a jurisdictional question, the Court considers it first, and because it concludes that the case is moot, it does not take up the rest of the parties' arguments.

Federal courts lack jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988); *see also Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002) ("[A] case is moot only where no effective relief for the alleged violation can be given."). It is the burden of the party asserting mootness to establish that there is no effective relief that the court can provide. *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1134 (9th Cir. 2004).

The Court must determine whether, following the issuance of the 2024 BiOp, there is any effective relief it could provide Plaintiffs. While the Fisheries Service cannot necessarily cure a failure-to-consult violation by subsequently completing consultation as required by the ESA, *see Natural Resources Defense Council v. Houston*, 146 F.3d 1118, 1129 (9th Cir. 1998) ("The failure to respect the process mandated by law cannot be corrected with post-hoc assessments of a done deal."), where no effective remedy remains, the failure-to-consult claim becomes moot, *see Ctr.*

4

*For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (concluding that failure-to-consult claim was moot where the court could "provide no meaningful relief"). Plaintiffs confirmed at the summary judgment hearing that they no longer seek reinitiation of consultation, as they had sought in their initial complaint, but they argue vacatur of the Rule and declaratory judgment remain effective available remedies such that the case remains live. Contrary to those assertions, the Court finds there is no effective remedy that remains available.

**First**, vacatur would not provide relief as to the claim at issue here. Plaintiffs challenge the Fisheries Service's failure to reinitiate consultation and its reliance on the 2012 BiOp, but the Fisheries Service has since reinitiated and completed consultation and the Rule now relies on the recently-issued 2024 BiOp. Plaintiffs contend that because the 2024 BiOp included no changes to the fishery to reduce impacts on leatherback sea turtles, vacatur of the Rule would provide effective relief as it "would help reduce the ongoing harm to Plaintiffs' interests from the fishery." ECF 57 at 4. While vacatur may well impact Plaintiffs' interests in protecting leatherback sea turtles, the relevant inquiry is whether vacatur could provide "effective relief for the alleged violation" complained of in this case – that is, the Fisheries Service's failure to consult. *Neighbors of Cuddy Mountain*, 303 F.3d at 1065; *see also Nw. Env't Def. Ctr.*, 849 F.2d at 1245 ("the controversy remains live and present" if "effective relief may still be available to counteract the effects of the violation"). Plaintiffs have not shown how, following the issuance of the 2024 BiOp, they continue to be harmed by the Fisheries Service's previous failure to consult. *See Feldman v. Bomar*, 518 F.3d 637, 643 (9th Cir. 2008) (noting that while the Ninth Circuit has found that live controversies remained following the completion of the challenged agency activity, "the common thread . . . is that 'the violation complained of may have caused continuing harm and . . . the court can still act to remedy such harm by limiting its future adverse effects' "). Thus, vacatur would not be an effective remedy to Plaintiffs' failure-to-consult claim. *See Wild Fish Conservancy v. Nat'l Park Serv.*, 687 F. App'x 554, 557 (9th Cir. 2017) (affirming district court's finding that failure-to-consult claim was moot where consultation subsequently occurred and new BiOp was issued).

5

**Second**, declaratory relief would similarly be ineffective in this case. Claims for declaratory relief are viable where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Jevons v. Inslee*, No. 22-35050, 2023 WL 5031498, at *1 (9th Cir. Aug. 8, 2023), *cert. denied*, 144 S. Ct. 500 (2023) (citing *Lohn*, 511 F.3d at 963). "[A] declaratory judgment merely adjudicating past violations of federal law – as opposed to continuing or future violations of federal law – is not an appropriate exercise of federal jurisdiction." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017).

While declaratory relief may be effective in certain circumstances in which an agency violates its consultation obligations, *see Forest Guardians v. Johanns*, 450 F.3d 455, 462 (9th Cir. 2006), such circumstances do not exist here. Nothing before the Court suggests that the Fisheries Service is engaged in an ongoing unlawful practice or has committed repeated violations that are likely to continue to occur. *Cf. id.* (concluding a declaration would provide effective relief where the Forest Service showed a "practice of not complying with the monitoring requirements" that was "likely to persist" despite the agency's recent reinitiation of consultation). The Ninth Circuit has found that where there is "no evidence in the summary judgment record to suggest that [defendant] has been uncooperative in the Section 7 consultation process, nor that [defendant] is under any annual obligation to undertake consultation absent new information," declaratory relief would not be effective. *All. for the Wild Rockies v. U.S. Dept. of Agriculture*, 772 F.3d 592, 601 (9th Cir. 2014); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (finding claim moot because there was no "on-going ESA violation" given that defendant was "not currently engaged in the same behavior that was the subject of [plaintiffs'] objections" and instead, a superseding BiOp was issued "with which [defendant] was complying"); *Friends of Bitterroot v. Anderson*, No. CV 20-104-M-DLC, 2020 WL 6888564, at *4-5 (D. Mont. Nov. 24, 2020) (finding case moot where there was "no evidence of a continuing practice" and "no evidence of a persistent violation of the law"); *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 870 F. Supp. 2d 943, 956 (E.D. Cal. 2012) (finding case moot where "Plaintiffs point[ed] to no . . . likelihood of repetitive violations").

6

1    No such evidence exists here.  Rather, Plaintiffs cursorily argue that a declaration that the
2    Fisheries Service unlawfully promulgated the Rule without first completing ESA consultation
3    "would prevent future harm to Plaintiffs' interests."  ECF 57 at 4.  This vague assertion, without
4    more, does not explain how Plaintiffs are likely to be harmed from the Fisheries Service's prior
5    failure to reinitiate consultation.  *See Lohn*, 511 F.3d at 964 (concluding plaintiff's claim for
6    declaratory relief moot where it "would serve no purpose in this case" because the agency had
7    listed the species as endangered, which was plaintiff's "ultimate objective").  Plaintiffs stated at
8    the summary judgment hearing that the purpose of a declaratory judgment, in effect, would be to
9    prevent the Fisheries Service from acting unlawfully without facing any consequences.  Nothing
10   Plaintiffs have argued suggests likely present or future risk to Plaintiffs, and "a bare declaratory
11   judgment that Defendants violated the [MSA] *in the past* would amount to an impermissible
12   advisory opinion."  *Jevons*, 2023 WL 5031498, at *1 (emphasis in original).  The Court thus finds
13   declaratory relief would not be effective.
14   Plaintiffs argue that the Fisheries Service could perpetually evade its consultation
15   obligations by implementing noncompliant regulations and initiating consultation only after the
16   procedural violation is challenged in order to moot that challenge.  The Court acknowledges
17   Plaintiffs' point that the procedural protections enshrined in the ESA and MSA are important for
18   advancing the goals of those statutes.  As the Ninth Circuit has noted, the consultation procedure
19   "itself offers valuable protections against the *risk* of a substantive violation and ensures that
20   environmental concerns will be properly factored into the decision-making process as intended by
21   Congress."  *Houston*, 146 F.3d at 1128-29 (emphasis in original).  Ultimately, however, these
22   considerations do not bear on the question of mootness and cannot cure the lack of an effective
23   available remedy.  "[P]olicy considerations alone cannot invest jurisdiction where there is no live
24   controversy."  *Feldman*, 518 F.3d at 644 (dismissing case as moot where appellants did not
25   demonstrate a remediable harm, despite their argument dismissal would "allow government
26   agencies to evade their statutory obligations").
27   //
28   //

Accordingly, Plaintiffs' claim is moot, and thus the Court lacks jurisdiction to consider the merits of the claim.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: January 16, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**